FILED

AUG 05 2026

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ______ DEP CLK

United States District Court
For The Eastern District of North Carolina
Western Division

Nijel R. Lee Bey,
Plaintiff

v.

Warden Waddell,
Sergeant Cousen,
Sergeant Nichols,
C/O M. Pettaway,
C/O Nelloms,
C/O Curl,
Kevin C. Monroe,
Todd E. Ishee,
Rakeesha L. Howell,
Monica Bond,
sued in their individual and official capacities,
Defendants

COMPLAINT

Civil Action No. 5:26-CT-3236-BO

I. JURISDICTION & VENUE

1. This is a civil rights action filed by Nijel Ramsey

Lee Berg, a state prisoner, to redress the deprivation of, under color of state law, [redacted] rights secured by the Constitution of the United States, under 42 U.S.C. § 1983, alleging excessive use of force and cruel & unusual punishment in violation of the Eighth Amendment of the United States Constitution and confinement in segregation in violation of the Plaintiff's First Amendment right to petition the government for redress of grievances and violation of the Due Process clause of the Fourteenth Amendment to the Constitution. The Plaintiff also alleges the torts of assault and battery and negligence.

2. The court has jurisdiction over the Plaintiffs' claims under 28 U.S.C. Section 1331 and 1343. The Plaintiff seeks declaratory relief pursuant to 28 U.S.C. Section 2201 and 2202. Plaintiff's claims for damages and injunctive relief are authorized by 28 U.S.C. Section 2283 & 2284 and Rule 65 of the Federal Rules of Civil Procedure. The court has supplemental jurisdiction over the Plaintiff's state law tort claims under 28 U.S.C. § 1367.

3. The Eastern District of North Carolina, Western Division, is an appropriate venue under 28 U.S.C. Section 1391(b)(2) because it is where the events giving rise to this claim occurred.

## II. PLAINTIFFS

4. Plaintiff, Nijel Ramsey Lee Bey, is and was at all times mentioned herein a prisoner of the State of North Carolina in the custody of the North Carolina Department of Adult Corrections. He is currently confined in Piedmont Correctional Institution, in Salisbury, North Carolina.

## III. DEFENDANTS

5. Defendant, Todd E. Ishee is the Commissioner of Prisons of the State of North Carolina Department of Adult Corrections. He is legally responsible for the overall operation of the Department and each institution under its jurisdiction, including Piedmont Correctional Institution.

6. Defendant, Warden Waddell is the warden of Maury Correctional Institution. He is legally responsible for the operation of Maury Correctional Institution and for the welfare of all the inmates in that prison.

7. Defendant, Kevin C. Monroe is an correctional housing unit manager at Maury Correctional Institution. He is legally responsible for the daily operation of the Tan 1 Unit at Maury Correctional Institution and for the welfare of all the inmates on that unit.

8. Defendant, Sergeant Cawany is a correctional officer (C/O) of the North Carolina Department of Adult Corrections who, at all times mentioned in this complaint, held the rank of sergeant and was assigned to Maury Correctional Institution.

9. Defendant, Sergeant Nichols, is a Correctional officer (C/O) of the North Carolina Department of Adult Corrections who, at all times mentioned in this complaint, held the rank of sergeant and was assigned to Maury Correctional Institution.

10. Defendant, C/O M. Pettaway, is a correctional officer of the North Carolina Department of Adult Corrections who, at all times mentioned in this complaint, held the rank of correctional officer and was assigned to Maury Correctional Institution.

11. Defendant, C/O Nellums, is a correctional officer of the North Carolina Department of Adult Corrections who, at all times mentioned in this complaint, held the rank of correctional officer and was assigned to Maury Correctional Institution.

12. Defendant, C/O Curl, is a correctional officer of the North Carolina Department of Adult Corrections who, at all times mentioned in this complaint, held the rank of correctional officer and was assigned to Maury Correctional Institution.

13. Defendant, Rakeesha L. Howell, is a Disciplinary Hearing Officer at Maury Correctional Institution and is responsible for conducting disciplinary hearings for prisoners accused of breaking prison rules.

14. Defendant, Monica Bond, is Chief Disciplinary Hearing Officer for the North Carolina Department of Adult Corrections and is responsible for reviewing all administrative appeals of disciplinary charges filed by North Carolina Department of Corrections inmates.

15. Each defendant is sued individually and in his/her official capacity. At all times mentioned in this complaint each defendant acted under the color of state law.

IV. FACTS

16 On the morning of August 28, 2023, I was sexually harassed, as well as verbally and physically abused by Sgt. Cowan, Sgt. Nichols, C/O Curl and C/O Williams.

17. On the above date, at approximately 2:30Am I had completed my duties of cleaning the lower right-hand bathroom in A-Dorm of the Pan 1 Unit.

18. As my regular custom has been and as policy and

procedure gives me the right to do so, after I had completed my janitorial duties I prepared to take an shower in the same bathroom/shower I had just cleaned.

19. Upon entering the shower and closing the shower door behind me I happened to look up and noticed C/O M. Pettaway watching me from the control booth. So, in an light-hearted manner and friendly jester I waved at C/O Pettaway before stepping behind the sheet I had also hung up over the shower door to give myself some privacy and block the view of anyone who might have desired to view me in the shower as I showered, as there were not any shower curtains in the showers of the Tan 1 or Tan 2 Unit, as there should be; an issue I had repeatedly tried to address with the Tan Unit unit managers to no avail. while housed at Maury Correctional Institution.

20. Seconds later after I had stepped into the shower and began showering Sgt. Cowan, along with C/O Griffen and C/O Whitfield came to the shower, snatched down the sheet I had hung up to shield myself from view and ordered me out of the shower.

21. I tried to explain to Sgt. Cowan that I am a dorm janitor, which he already knew from past experience,

and that I had just finished my janitorial duties, that's why I was in the shower.

22. I tried to ask Sgt. Cowan why he was ordering me out of the shower but he refused to give me any reason at all and repeated his order for me to get out of the shower.

23. As I stood in the shower, drenched from head to toe with water in wet underwear and shorts I tried to explain to Sgt. Cowan that I at least needed to dry off and change out of the wet clothes I was wearing. Sgt. Cowan refused to allow me to do this and ordered me to simply put on a t-shirt and my shoes and step out of the shower and the dorm.

24. Still in confusion as to why these events were taking place, I did as Sgt. Cowan had instructed and put on my t-shirt and shoes and stepped outside the dorm.

25. Once outside the dorm I was handcuffed and escorted to segregation by C/O Griffin and Sgt. Cowan. It was at this time Sgt. Cowan began to accuse me of blowing kisses to C/O Pottawany as I entered the shower.

26. Not once did Sgt. Cowan stop to try to have an intelligent conversation with me about the matter and get my side of the matter. Instead, he just kept accusing me of blowing kisses at C/O Pottaway as he and C/O Griffen escorted me to segregation.

27. In my defense to these accusations I told Sgt. Cowan that if I had blown an kiss to C/O Pottaway, which I did not, it would have been meant to be taken as an light-hearted and friendly jesture. Furthermore, I explained to Sgt. Cowan that according to policy and procedure female staff are not to watch male prisoners in the shower, so how can anyone accuse me of doing such an minor and insignificant thing. Sgt. Cowan provided no answer to this question and simply proceeded to escort me to segregation.

28. Once on the segregation unit, Sgt. Cowan told C/O Nellums, C/O Curl and C/O Clayton that I was on the unit, in the shower, blowing kisses to female staff. This seemingly upset C/O Nellums and C/O Curl to the point of anger as they began to hurl homosexual comments at me, along with Sgt. Cowan about how they wanted me to blow them kisses and how it will make their dick hard, etc. All of this was done before C/O Clayton, who is an female, in an attempt to embarrass and humiliate me.

29. During the course of these events, C/O Williams and C/O Curl escorted me to the segregation control booth and I was told to stand with my chest to the wall. Not understanding the order or the need for it, as I was already in handcuffs with my hands behind my back, I asked C/O Williams why he wanted me to put my chest to the wall. My question was met by C/O Williams, C/O Curl and Sgt. Cowan forcefully throwing me into the wall and holding me there, saying because they told me so.

30. As C/O Curl and Sgt. Cowan held me against the wall C/O Williams put me in full restraints, with waist chain, and leg irons, with my hands behind my back, while all three (3) male C/O's continued making homosexual remarks towards me.

31. In placing me in full restraints, leg irons and waist chains, C/O Williams put them on me extremely tight and in an effort to cause me great pain and discomfort.

32. It is my understanding that according to the North Carolina Department of Adult Corrections (NCDAC) policy and procedure full restraints, waist chains and leg irons are only to be used on prisoners who are uncuffed and are acting out violently towards others or themselves and cannot be

controlled any other way, or to safely transfer a prisoner from one facility to another or an outside facility; not to further restrain an prisoner who is already restrained by handcuffs with his hands behind his back and who is giving no resistance at all and, especially, not in an effort to cause an prisoner pain and discomfort, as C/O Dellums had done by placing me in full restraints, waist chain and leg irons. There is no justification for that! Period!

33. While being placed in full restraints, waist chain and leg irons, Sgt Nichols came onto the segregation unit and began to join in with Sgt. Cowan, C/O Dellums and C/O Curd in making all kinds of homosexual remarks towards me.

34. After all of the restraint gear had been placed on me Sgt. Cowan and Sgt. Nichols began to make insinuating threats towards me intermittently as they continued their homosexual barrage of words and sexually suggestive remarks towards me. Again, this was done in the presence of C/O Clayton, an female officer.

35. Finally, after an period of time I was placed in an holding cage on the segregation hallway and made to stand in the full restraints.


Case 5:26-ct-03236-BO Document 1 Filed 08/05/26 Page 10 of 30

36. It should be noted here, that prior to this incident the year before I was housed on the Tan 2 Unit at Maury Correctional Institution, where I had an run-in with Sgt. Cowan and Sgt. Nichols over me being off of my bunk at night, which led to me being assaulted and battered by Sgt. Cowan and Sgt. Nichols in the dining hall and the Sergeant's office on the segregation unit with the foreknowledge and consent of an Lt. Dudley and with the assistance of the segregation staff.

37. I filed an official complaint about this matter with the facility staff through an Lt. Holloway. An investigation was supposedly conducted but nothing much ever came from it other than me being placed in segregation for about two (2) weeks and Sgt. Cowan being absent from the Tan 2 Unit for about an month's time at the most.

38. Because of the continued abuse I suffered at the hands of Sgt. Cowan, Sgt. Nichols and the staff at Maury Correctional Institution and, because of the NCDAC's refusal to anything about it I was forced to file an civil law suit with the Court on the prior incident (Lee v. Cowan, 2025 WL 2617701).

39. It should also be noted here that other prisoners

while housed at Marion Correctional Institution, because of the abuse suffered at the hands of Sgt. Cowan and Sgt. Nichols and NCDAC staff's refusal to properly address those abuses, has filed similar PREA-related complaints and suits against Sgt. Cowan and Sgt. Nichols with the courts. One of those being filed by an Benjamin Alexander. The other being an civil lawsuit being filed by an prisoner with the North Carolina Industrial Commission, File # TA-30772.

40. During the incident that took place on the morning of August 28, 2023, Sgt. Cowan and Sgt. Nichols made mention of the incident I experienced with them the prior year and insinuated to me that they were protected by the administration and that they could do to me whatever they wanted to.

41. Sgt. Cowan, Sgt. Nichols and C/O Griffin left the segregation unit shortly thereafter. But before doing so, Sgt. Nichols threatened me by saying that "I better be off of his unit by the time he returned to work on Wednesday (August 30th, 2023) or else he would make me his bitch." I asked Sgt. Nichols if he was threatening me and he responded by saying, "Take it however you want to!"

42. That morning, I was left in that holding cage from 2 something to about 5:45 AM in soaking wet clothes and for most of that time in full restraints.

43. It should be noted here that the restraints placed upon me were so extremely tight that not even an hour after being placed in them I felt the circulation in my hands being cut off. I informed two (2) nurses, Sgt. Johnson and other segregation staff of this but no one did anything to try to get the restraints loosened until much later when only the leg irons and waist chain was removed from me, but I was left in handcuffs with my hands behind my back and placed back in the holding cage by 40 Curd.

44. While I sat in the holding cage in segregation, Sgt. Cowan and Sgt. Nichols returned to the Tan 1 Housing Unit and searched my locker, leaving all of my property [redacted] laid out on my bed, instead of placing it neatly back into my locker as they had found it once they were finished as policy and procedure dictates for them to do.

D. EXHAUSTION OF LEGAL REMEDIES

45. Upon being released from segregation on the morning

of August 28, 2023, I immediately set about addressing the abuse I experienced at the hands of the defendants by first, submitting an oral/audio complaint on the matter via the PREA Hotline provided by the NCDAC.

46. Secondly, I sat down and wrote Warden Waddell an letter/legal notice informing him of the matter in detail and respectfully demanding that he followed through with his duty to see to it that this matter is properly addressed and that I am protected from any further abuse, be it physically or mentally, at the hands of his staff. Warden Waddell never formally responded to me concerning this matter.

47. On the morning of August 31, 2023, after not receiving what I thought would be an immediate response from my audio PREA complaint, nor receiving an response from Warden Waddell and in fear of Sgt. Cowan and Sgt. Nichols return that evening, I relayed the events of August 28, 2023 to Kevin C. Monroe, the Tan 1 Unit Manager and his assistant unit manager.

48. Unit manager Monroe's response to me concerning this matter was to immediately shift the blame back onto me,

by stating that "I must have done something" for Sgt. Cowan, Sgt. Nichols, C/O Nellums and C/O Curl to treat me in such an way.

49. It should be noted that up to this point I had not had an disciplinary infraction during my stay at Maury Correctional Institution. In spite of this, Sgt. Cowan and other staff members always sought out ways to try to provoke me into acting out of character and when I reported these abuses Unit manager Monroe and other staff always sought to cover them up and shift the blame back on to me or try to make me feel guilty for reporting them.

50. On this morning of August 31, 2023, only after I had repeatedly declared my innocence did Unit manager Monroe reluctantly agree to look into my claims of abuse, and that, only after I had relayed to him that I filed an audio PREA complaint.

51. At approximately 10:30AM I was called to the Tan 1 Unit managers office and was confronted by an Ms. Moore about the PREA complaint I called in.

52. Instead of being fair, impartial, sympathic or just

plain neutral in her approach to the matter with me Ms. Moore seemed very angry and agitated by the fact that I had filed the complaint.

53. Ms. Moore communicated to me that she was part of the administration at the facility and that she was there to take my written statement of what happened to me on the morning of August 28, 2023.

54. Ms. Moore directed me to write my statement there in her presence and to write my statement only detailing the sexual harassment / abuse allegations. and nothing on the excessive use of force.

55. Before taking my statement Ms. Moore insinuated to me that I had made some false statements in my audio complaint. And, as I wrote my written statement Ms. Moore kept stopping me every few sentences I wrote to read and direct me as what to write and what not to write. In essence, Ms. Moore censored me from writing an full and complete statement of what happened to me on the morning of August 28, 2023 and made me feel guilty for wanting to report it.

56. Not long after submitting my written PREA statement

to Ms. Moore I was approached by the Tan 2 Unit Assistant Unit Manager and an Sergeant, whose names I can not recall at this time, and was told that they were taking me segregation in relation to my filing of the complaint.

57. After being placed in segregation, on September 1st, 2023, I filed an Confidential Grievance with the Commissioner of Prisons, Todd E. Ishee via the facility mail system in accordance with the NCDAC policy and [redacted] procedure. Along the Confidential Grievance I enclosed an letter explaining to Todd E. Ishee that the reason why I was filing the Confidential Grievance with his office was because of the abuse I was experiencing at the hands of staff at Maury Correctional Institution and the unwillingness of the staff at the facility to process my grievances on these matters when I tried to formally report them using the administrative grievance procedure. Commissioner Ishee never responded to my grievance nor sent word to me if it had been denied or processed.

58. On September 18, 2023, approximately twenty-one (21) days after I had filed my PREA complaint and was placed in segregation for doing so, Tan 1 Unit Manager Kevin C. Monroe brought me an disciplinary infraction related to my PREA

complaint, under the false pre-tense of "disrespecting staff"!

59. In processing this disciplinary infraction my rights were violated by the fact that the administration created an false statement to charge me with the disciplinary infraction, and in violation of the NCDAC policy & procedure the discipli-nary infraction was given to me in retaliation for my filing of my PREA complaint and was issued to me twenty-one (21) days after the fact. In addition to this, the administration had two (2) staff members falsely state that [redacted] I refused to sign my rights and write an statement on my behalf in relation to the matter.

60. Once I realized that this violation of my rights was taking place I immediately filed an Confidential Grievance with the Commissioner of Prisons, Todd E. Ishee, via the facility mail system and in accordance with the NCDAC policy & procedure. Along with the Confidential Grievance I enclosed an cover letter explaining why I was filing the grievance with his office and detailing the violation of my rights that was taking place. Commissioner Ishee never responded to my grievance nor did he send any word on if my grievance had been accepted or rejected.

61. In addition to filing my Confidential Grievance with Commissioner Ishee, I sent Marion Correctional Institution Warden Waddell an letter/Legal Notice notifying him of how his staff was violating my rights and retaliating against me. Warden Waddell never responded to my letter/legal notice to him.

62. On September 20, 2023, I was brought before Disciplinary Hearing Officer Rakeesha L. Howell concerning the false disciplinary infraction. I explained to DHO officer Howell that [redacted] the disciplinary statement was false and it was filed against me in retaliation for me filing my PREA complaint and twenty-one (21) days after the fact, all an clear violation of the NCDAC policy & procedure. I also relayed to DHO officer Howell that staff refused to notify me of my rights & let me write an statement on my behalf concerning the matter. In spite of all of this, DHO officer Howell still found me guilty of the disciplinary infraction and gave me the maximum punishment related to the infraction, that being twenty (20) days in segregation, twenty-four (24) days of credit time loss, forty (40) hours of extra duty work, suspension of my canteen and visitation privileges for sixty (60) days.

63. Upon being found guilty of the false disciplinary infraction I immediately filed an appeal detailing

how the disciplinary infraction was false and filed in retaliation of my filing of my PREA complaint and how the staff at Moody Correctional Institution purposefully used deceptive tactics to ensure my conviction of the disciplinary infraction. Chief Disciplinary Hearing Officer Monica Bond reviewed and denied my appeal and, upheld the false disciplinary infraction against me.

64. On October 25th, 2023, after receiving notice that my disciplinary appeal had been denied and the infraction upheld I filed an Confidential Grievance with Commissioner Ishee via the facility mail system detailing the retaliatory acts of the Moody Correctional Institution staff against me and the measures they took to violate my rights. Commissioner Ishee never responded to my Confidential Grievance nor sent me word of if the grievance had been accepted or denied.

65. On November 8th, 2023, I received an notice that stated I would be held in segregation an additional forty-five (45) days and I was not to be released without the authorization of an Captain Burgess.

66. On December 18th, 2023, after being left in segregation for such an long period of time and coming to the realiza-

tion of deep corruption within the North Carolina Department of Adult Corrections and fearing further retaliation and possible physical harm towards me at the hands of the staff at Maury Correctional Institution, I wrote Warden Waddell an Letter/Legal Notice explaining to him that I had filed an lawsuit against Sgt. Cowan and Sgt. Nichols and those staff members who had helped them abuse me the prior year (Lee v. Cowan, 2025 WL 2617701) and that any attempt by him and his staff to place me back in regular population under the supervision of Sgt. Cowan and/or Sgt. Nichols will be deemed as an act of retaliation and an attempt to place me back in harms way. Warden Waddell never responded to my letter/Legal Notice.

67. On January 2nd, 2024, the staff at Maury Correctional Institution tried to place me back in regular population under the supervision of Sgt. Cowan and/or Sgt. Nichols. When I refused to return to regular population under their supervision I was given an disciplinary infraction of "disobeying an direct order."

68. It should be noted here that by this time I had been kept in segregation approximately five (5) months in retaliation for me filing my complaint against the defendants, not to mention the loss of my job as an dorm janitor.

69. On January 18th, 2024, I was brought before DHO officer Howell for the disciplinary infraction of "disobeying an direct order" for refusing to be placed back in Regular population under the supervision of Sgt. Cowan and/or Sgt. Nichols.

70. In general, I explained to DHO officer Howell the abuse I had been suffering under the supervision of Sgt. Cowan and/or Sgt. Nichols, the concern I had for my safety and security, the fact that I had filed an lawsuit against them because of the abuse (Lee v. Cowan, 2025 WL 2617701), and the fact that I had written an letter/Legal Notice to Warden Waddell detailing these facts and respectfully demanding that I not be placed back in regular population under these sergeants supervision but rather transferred as soon as possible to another medium custody facility to ensure my safety and security.

71. After hearing all of this, DHO officer Howell expressed to me that the fact still remained that I had refused housing and I could willingly plead guilty to the infraction or she would find me guilty of the infraction regardless and impose upon me the most severe sanctions related to the infraction.

72. Knowing that DHO officer Howell was going to find me guilty of the infraction whether I pleaded guilty or not I was forced to plead guilty to the infraction to avoid the enhanced sanction. Shortly thereafter, I was transferred to Piedmont Correctional Institution by way of an court order.

[redacted]

73. On December 12th, 2024, after being transferred to Piedmont Correctional Institution and not hearing anything back on the PREA complaint I had filed on the defendants I filed an grievance in accordance to Chapter G, Section .0306 of the North Carolina Department of Adult Corrections Policy and Procedure, related to the matter.

74. After some time had gone by and I still had not received any response to my grievance I refiled it and made reference to the prior grievance by its file number.

75. The response I received from the re-filing of this grievance is essentially that my original grievance was forwarded back to Maury Correctional Institution, where it was given to Tan 1 Unit Manager, Kevin C. Monroe, whom I had reported the incident to and had accused me of wrong-doing and, who, in an act to protect and cover-up the abuse I suffered at the hands of the defendants then, and now, rejected my grievance under the false claim that it alleged no acts of

sexual abuse or harassment.

76. This was done in violation of the policy and procedure, as Unit Manager Monroe was directly involved in the matters I complained of by way of me reporting them to him. Therefore, by policy and procedure he could not have been the investigating officer on the disciplinary infraction I recieved related to this matter, nor the investigating officer to my PREA complaint. All this was done to protect and cover-up the abuses I suffered at the hands of the defendants.

77. Again, it should be noted that the defendants, Sgt. Cowan and Sgt. Nichols has had other complaints and law suits of this nature filed on them in the past by other prisoners. Some of which the Plaintiff has named within this complaint.

VI. LEGAL CLAIMS

78. The Plaintiff realleges and incorporates by reference paragraphs 1-77.

79. The actions of the defendants Cowan, Curl, Nalluns and Nichols in making sexually suggestive comments to the Plaintiff were done maliciously and sadistically and constituted

cruel and unusual punishment in violation of the Eighth Amendment of the United States Constitution.

80. The actions of defendants Cowan, Curl, and Williams in using physical force against the Plaintiff, placing him in full restraints, with waist chain and leg irons, extremely tight to cause pain and discomfort and placing him in an holding cage for an number of hours in soaking wet under wear without need or provocation was done maliciously and sadistically and constituted cruel and unusual punishment and the tort of assault and battery under the Eighth and Fourteenth Amendment of the United States Constitution.

81. The failure of defendants Hughes, Waddell and Monroe to take disciplinary or other action to curb the known pattern of physical [redacted] and/or sexual abuse of inmates by defendants Cowan and Nichols constituted deliberate indifference, and contributed to and proximately caused the above described violation of Eighth Amendment rights and assault and battery.

82. The actions of defendants Hughes, Waddell and Monroe of placing the Plaintiff in administrative segregation and keeping him there for approximately five(5) months and removing him from his job assignment constituted an violation of the

Plaintiff's First Amendment right to petition the government for redress of grievances.

83. The actions of defendant Monroe and Pettaway in preparing an false disciplinary report, refusing to notify me of my rights or allowing me, the Plaintiff, to prepare an written defense on my behalf to ensure an disciplinary conviction denied the Plaintiff the due process of law in violation of the Fourteenth Amendment of United States Constitution.

84. The actions of defendant Howell of finding the Plaintiff guilty of the false disciplinary charge after the Plaintiff had notified her of how the disciplinary charge was false and was being used as an retaliatory tool against the Plaintiff for filing an complaint against the defendants Cowan, Nichols, Cud and Nelums, and after notifying her of the due process of law violations, amount to due process of law violations of the Fourteenth Amendment of the United States Constitution on the part of defendant Howell.

85. The actions of defendants Foshee, Waddell and Bond in refusing to overturn the Plaintiff's disciplinary conviction, despite their knowledge of the above described due process violations, constituted deliberate indifference and further denied the Plaintiff the due process of law in violation of the Fourteenth Amend-

ment of the United States Constitution.

86. The actions of defendant Howell of finding Plaintiff guilty of disobeying an direct order for refusing housing under the supervision of defendants Cowan and/or Nichols, after it had been made known to her the recurring abuses the Plaintiff had suffered under their watch and the concern for his safety, constitutes deliberate indifference to the Plaintiff's mental and/or physical safety and security in violation of the Eighth Amendment of the United States Constitution.

87. The actions of defendant Munroe in preventing the Plaintiff's PREA and excessive use of force complaints to be fully investigated and processed constituted deliberate indifference and further denied the Plaintiff the due process of law in violation of the Fourteenth Amendment of the United States Constitution.

88. The Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs described herein. Plaintiff has been and will continue to be irreparably injured by the conduct of the defendants unless this court grants the declaratory and injunctive relief which Plaintiff seeks.

VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this court enter judgment granting Plaintiff:

89. A declaration that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

90. A preliminary and permanent injunction ordering the Commissioner of Prisons, Todd E. Ishee and/or his office to immediately establish the electronic filing of prisoner complaints on prisoner tablets and kiosks within prisoner housing units within all institutions across the State of North Carolina.

91. Compensatory damages in the amount of $100,000 against each defendant, jointly and severally.

92. $10,000 jointly and severally against defendants Howell and Bond for the punishment and emotional injury resulting from their denial of due process in connection with the Plaintiff's disciplinary proceedings.

93. Punitive damages in the amount of $50,000 against each defendant.

94. A jury trial on all issues triable by jury.

95. Plaintiff's costs in this suit.

96. Any additional relief this court deems just, proper, and equitable.

Dated: 7.28.2026

Respectfully submitted,

Nijel Lee Bey

Nijel Lee Bey
#0688249
Piedmont Correctional Institution
1245 Camp Road
Salisbury, NC 28147

XIII. VERIFICATION

I have read the foregoing complaint and hereby verify that the matters alleged therein are true, except as to matters alleged on information and belief, and, as to those, I believe them to be true. I certify under penalty of perjury that the foregoing is true and correct.

Executed at Salisbury, NC on July 28, 2026.

Signed: Nijel Lee Beez
Nijel Lee Beez

Sworn to before me this
29th day of July, 2026
Swannette M Jones
Notary Public
My Commission Ends: February 05, 2028

State: North Carolina
County: Rowan

SWANNETTE M JONES
Notary Public, North Carolina
Rowan County
My Commission Expires
February 05, 2028

Swannette M Jones
My commission expires:
February 05, 2028